UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

LIBERTY LEGAL FOUNDATION;
JOHN DUMMETT;
LEONARD VOLODARSKY;
CREG MARONEY,

    Plaintiffs

v.

NATIONAL DEMOCRATIC PARTY
of the USA, Inc.;
DEMOCRATIC NATIONAL COMMITTEE;
DEBBIE WASSERMAN SCHULTZ,

    Defendants

CASE NO: 2:11-cv-02089-SRB

Judge: Bolton

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Pursuant to this Court's Rules, Plaintiffs submit this Opposition and Memorandum in Opposition to Defendant Democratic National Committee ("DNC") and Defendant Schultz's motion to dismiss.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Contrary to the Defendant's Assertion, No Federal Court has Ruled on the Question Presented Since 1874**

The Defendants assert that the issue raised by the Plaintiffs has been "rejected by every federal and state court to consider the issue." *See* Def.'s Mtn. at 4. However, the

first five paragraphs of Plaintiffs' complaint distinguish the Plaintiffs' lawsuit from any other cases to which the Defendants may be referring.

The instant case asserts negligence and fraud against non-governmental defendants. *See* Plfs. 2nd Amd. Compl. ¶ 3. Plaintiffs are unaware of any case that has made such claims, or named non-governmental defendants in relation to their handling of the Article II question presented.

Also contrary to Defendants assertion, the Plaintiffs make no claims questioning the birthplace of Presidential candidate Obama or the citizenship status of his mother. The Plaintiffs' complaint does not assert that Mr. Obama is not a citizen of the United States. The Plaintiffs make no assertion regarding candidate Obama's passports, or social security number, or any other fact related to candidate Obama, other than the one fact that his father was not a U.S. citizen. This one fact has been repeatedly admitted by Mr. Obama and by various government agents.

Contrary to the Defendant's assertions, the issue presented by the Plaintiffs has not been substantively ruled upon by any Federal Court since 1874. *See Minor v. Happersett*, 88 U.S. 162, 167 (1874).

Earlier this month the Federal District Court for the Western District of Tennessee found that the "question presented, the meaning of the phrase 'natural born citizen' as a qualification for the Presidency set out in Article II of the Constitution, is important and not trivial." *See* Ex. 1 at 8-9 (attached).

## II.   Defendants' Legal Conclusion Regarding the Definition of "Natural Born Citizen" is Incorrect

Defendants' motion asserts that "there is no question as to President Obama's status as a 'natural-born citizen'"…concluding "President Obama is a natural born citizen by virtue of his birth in the United States." Defs. Mot. At 12. The Defendants cite *United States v. Wong Kim Ark* in support of their conclusion. *Id*. citing 169 U.S. 649, 702 (1898). However, the holding of *Wong Kim Ark* ("WKA") did not address the definition of the term "natural born citizen" nor did it address Article II qualifications to serve as President. *Id.* at 705.

The WKA holding did not define the term "natural born citizen" because the WKA facts did not present a question that required interpretation of Article II. *Id.* at 653. WKA explicitly addressed the scope of 14th Amendment citizenship. *Id.* at 705. However, citizenship under the 14th Amendment is legally distinct from "natural born citizen" as required under Article II for eligibility to serve as President.

Just twenty-four years prior to WKA the Supreme Court did define "natural born citizen" as that term is used in Article II. *Minor v. Happersett*, 88 U.S. 162, 167 (1874). Unlike WKA, the *Minor* Court expressly used its definition of "natural born citizen" to reach its holding. *Id*.

Because the WKA Court did not need to define Article II "natural born citizen" to reach its holding, any inferences drawn from WKA about the term "natural born citizen" are simply dicta. *Black's Law Dictionary* 465 (Bryan A. Garner ed., 7th ed., West 1999)

(Defining Dictum Gratis as, "A court's discussion of points or questions not raised by the record or its suggestion of rules not applicable in the case at bar.")

In contrast, the *Minor* Court's explicit definition of "natural born citizen" was part of its holding because that Court explained that defining this term was required in order to reach its conclusion on the matter presented to the Court. 88 U.S. at 167; *See also Black's Law Dictionary* 737 (Bryan A. Garner ed., 7th ed., West 1999) (Defining Holding as, "A court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision.").

Therefore, the *Minor* Court's definition of "natural born citizen" is binding precedent. *Black's Law Dictionary* 1195 (Bryan A. Garner ed., 7th ed., West 1999) ("[A] case becomes a precedent only for such a general rule as is necessary to the actual decision reached, when shorn of unessential circumstances.") (*quoting* 1 James Parker Hall, Introduction, *American Law and Procedure xlviii* (1952)).

Since dicta cannot change binding precedent, the term "natural born citizen" under Article II is defined by the Supreme Court's decision in *Minor*. The Defendants' citation to WKA does nothing to support their assertion that candidate Obama is a "natural born citizen." Simply being born in the United States does not necessarily make one a "natural born citizen." Having a mother that is a citizen of the United States does not necessarily make one a "natural born citizen." According to binding precedent from the U.S. Supreme Court, to be a "natural born citizen" a person must be born in the United States

of two parents that are U.S. citizens at the time the "natural born citizen" is born. *Minor*, 88 U.S. at 167.[1]

The Defendants' assert that the *Minor* Court "left open the question of whether a child born to alien parents is a 'natural born citizen,'" and state that it was not necessary for the Minor Court to resolve doubts on this point. *See* Defs.' Mot. At 13. This is a misrepresentation. While the *Minor* Court followed its definition of natural born citizen with a statement that "there have been doubts" about the broader class of people identified as "citizen," a plain-language reading of the Court's sentence leaves no doubt that the Court was not implying doubt regarding its definition of natural born citizen. 88 U.S. at 167. Any doubt on this point is negated by simply reading the next sentence of the opinion clarifying that there have "never been doubts" as to the narrower class of natural born citizens. *Id*.

This understanding of the *Minor* Court's statement is supported by its extensive discussion of the broader term "citizen" at the beginning of the Court's opinion. *Id*. at 166. The Court concludes its discussion of the term citizen by stating, "When used in this sense it is understood as conveying the idea of membership of a nation, and nothing more." *Id*. The Court, therefore, clearly established that the term "citizen" in its opinion was to be understood to be very broad. With this in mind, the *Minor* Court's statement is unambiguous: it established two distinct classes of people, citizens and natural born

---

[1] The WKA Court recognized that the facts presented in that case didn't give that Court an opportunity to change the definition of Article II "natural born citizen." This is why the WKA Court expressly identified its holding as its holding. 169 U.S. at 705. The WKA holding is very narrowly tailored to the facts addressed in the WKA case, and never mentions the term "natural born citizen." *Id*.

citizens; "citizen" is a broad term that is inclusive of all "natural born citizens"; as to the outer limits of the term "citizen" there are doubts; and as to the definition of "natural born citizen" there have "never been doubts". *Id*.

Venerable rules of construction also prevent use of any dicta from the WKA Court to overrule the *Minor* Court's precedential definition of "natural born citizen." As Chief Justice Marshall explained in *Marbury v. Madison*, "It cannot be presumed that any clause in the constitution is intended to be without effect; and therefore such a construction is inadmissible, unless the words require it." 5 U.S. 137, 174 (1805). This principal is also applied to statutory construction: "When there are two acts upon the same subject, the rule is to give effect to both if possible…The intention of the legislature to repeal must be clear and manifest." *United States v. Borden Co.*, 308 U.S. 188, 198 (1939). This venerable principal is still in use: "The Courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *See also United States v. Tynen*, 78 U.S. 88 (1870); *Henderson's Tobacco*, 78 U.S. 652, 657 (1870); *General Motors Acceptance Corp. v. United States*, 286 U.S. 49, 61 (1932); *Wood v. United States*, 41 U.S. 342, 362-363 (1842).

The *Minor* Court's definition of Article II "natural born citizen" co-exists with the WKA Court's determination of the scope of 14th Amendment citizenship. By contrast, the Defendants' insistence that WKA overturns *Minor* would leave Article II "natural born citizen" with no independent meaning from the 14th Amendment's "citizen."

This conclusion is not changed by the fact that naturalized citizens can be distinguished from 14th Amendment citizens. Each legal term, naturalized citizen, 14th Amendment citizen, and Article II natural-born-citizen, must be given independent meaning if such independent meaning can be given. *Marbury*, 5 U.S. at 174; *Borden Co.*, 308 U.S. at 198.

Again, the WKA dicta cannot grant Article II "natural born citizen" status to candidate Obama.[2] The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, must be **DENIED**.

### III.   Defendants' 12(b)(6) Argument Fails

All of Plaintiffs' factual allegations contained within their complaint must be taken as true for purposes of Defendants' motion to dismiss. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555* (2007); *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 249 (2009).

Plaintiffs' Complaint alleges that "Mr. Obama's father was not an American citizen at the time of Mr. Obama's birth. Mr. Obama has admitted this fact." 2nd Amd. Compl. ¶10. The Constitution of the United States mandates "No person except a natural born citizen, or a citizen of the United States at the time of the adoption of this Constitution, shall be eligible to the office of President;" and the United States Supreme Court has defined Article II "natural born citizens" as "all children born in a country of parents who were its citizens." Art. II sec. 1; *Minor v. Happersett*, 88 U.S. 162, 167 (1875). Taking as true the fact that candidate Obama's father was not a U.S. citizen at the

---

[2] *See* Proposed Or., Welden v. Obama, GA OSAH Case #1215137-60, attached as Ex. 2.

time of candidate Obama's birth, candidate Obama can never be a "natural born citizen" as required by Article II, and therefore is not constitutionally qualified to serve as President. *Id.*

The Defendants' own citations support the conclusion that WKA does not define the Article II term "natural born citizen." *See* Defs.' Mot. at 12-13 (Describing WKA as "holding that a person born to non-citizens from China was a *citizen* of the United States,")(emphasis added) (*and twice quoting* WKA: "[e]very person born in the United States, and subject to the jurisdiction thereof, becomes at once a *citizen*,") (emphasis added). The WKA Court knew the difference between the terms "citizen" and the legally distinguishable term "natural born citizen," yet it chose to use only the term "citizen" in its holding. Had it meant to alter the Article II term it would not have limited its holding to the term "citizen."

The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, must be **DENIED**.

## IV.   Plaintiffs Have Standing to Bring Suit

Last December the 9th Circuit ruled that political candidates for office have standing to challenge the eligibility of rival candidates for the same office. *Drake v. Obama*, 664 F.3d 774, 782-783 (9th Cir. 2011) (*citing Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981). Specifically, the Drake Court ruled that an independent candidate for President of the United States has standing to challenge the constitutional qualifications of candidate Obama. *Id. citing Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990).

Defendants acknowledge that Plaintiff Dummett has alleged that he is an independent candidate for the office of U.S. President, and that he is registered with the Federal Election Commission as such. Defs.' Mot. At 6. Taking these allegations as true, Plaintiff Dummett clearly has standing to challenge candidate Obama's constitutional eligibility to hold the office of President.

After acknowledging Plaintiff Dummett's allegations and the on-point binding precedent, Defendants incorrectly assert that Plaintiffs "do not allege that any defendant has engaged in a practice that would provide President Obama with an 'unfair advantage in the election process.'" *Id.*

Plaintiffs' complaint alleges that "The Democratic Party will send documents to the Secretaries of State for all 50 states announcing that Mr. Obama is its Presidential nominee for the 2012 general election and falsely representing that he is qualified to hold the office of President." 2nd Amd. Compl. ¶52. "The Democratic National Committee (DNC) is a subdivision of the Democratic Party responsible for organizing the national convention, certifying candidates, and other executive and administrative organizations of the Democratic Party." *Id.* at ¶37. "Said documents will be signed by Defendant Schultz." *Id.* at ¶53. "Upon receipt of said document, and in reliance upon the false representations made by the Democratic Party and its agents in said document, the Secretaries of State for the 50 states will be required to have Mr. Obama's name placed on ballots in all counties for the office of President of the United States." *Id.* at ¶55. And that "Absent the requested relief, Plaintiffs Dummett and Volodarsky will be irreparably harmed because the appearance [of] Mr. Obama's name on Ballots for the 2012 general

election would result in votes for Mr. Obama that would otherwise be cast for Mr. Dummett or Mr. Volodarsky." *Id.* at ¶57. These are exactly the types of allegations supporting standing that the 9th Circuit referred to in *Drake v. Obama* and *Owen v. Mulligan*. 664 F.3d at 783; 640 F.2d at 1132-33.

While it is far from clear, the Defendants' motion must be taken to assert that the Plaintiffs allegations fail because they are not directed at candidate Obama, but are instead directed toward the Democratic Party and its agents and subdivisions. However, as established by the facts alleged, the actions of the named Defendants, as asserted and taken to be true, will clearly and directly result in specific harm to Plaintiff Dummett, just as in *Drake* and *Owen*. The named Defendants will send documents to the 50 states certifying that candidate Obama is constitutionally qualified to hold the office of President. 2nd Amd. Compl. ¶52. The Secretaries of State for the 50 States will rely upon the false statements of the named Defendants and will be required to place candidate Obama's name on the ballot. *Id.* at ¶55 & 10-13. The Defendants' actions will cause the same harm to Plaintiff Dummett as that which created standing for the Plaintiffs in *Drake* and *Owen*. *Id.* at ¶57.

Defendants' unclear assertion could also be read to rely upon the fact that Plaintiffs' complaint includes allegations of facts that have not yet occurred. However, this distinction also fails to destroy standing.

Standing "depends upon the probability of harm, not its temporal proximity." See *520 S. Mich. Ave. Assocs. V. Devine*, 433 F.3d 961, 962 (7th Cir. 2006). "Immediacy requires only that the anticipated injury occur within some fixed period of time in the

future, not that it happen in the colloquial sense of soon or precisely within a certain number of days, weeks, or months." *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008).

For the purposes of this motion all of Plaintiffs' factual allegations contained within their complaint must be taken as true. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555* (2007); *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 249 (2009). For the purposes of the instant motion it must be taken as true that the Defendants will send documents to the 50 states certifying that candidate Obama is constitutionally qualified to hold the office of President. 2nd Amd. Compl. ¶52. The Secretaries of State for the 50 States will rely upon the false statements of the named Defendants and will be required to place candidate Obama's name on the ballot. *Id.* at ¶55 & 10-13. The temporal issues vaguely referred to in Defendants motion do nothing to defeat standing because the alleged facts are certain to occur. If the allegations are not true, and the Defendants do not plan to send the alleged certifications to the 50 States, then the Defendants should have no objections to this Court ordering an agreed judgment prohibiting the Defendants from sending such certifications.

Regarding Liberty Legal Foundation's (LLF) standing, an association has standing to bring suit on behalf of its members when: a) its members would otherwise have standing to sue in their own right; b) the interests it seeks to protect are germane to its organization's purpose; and c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Cmm'n*, 432 U.S. 333, 342 (1977). This lawsuit is germane to LLF's purpose

because protection of individual rights and state sovereignty as established in the Constitution is necessary for the protection of basic human rights. Participation of all LLF members is not required because LLF represents its members' common interests in opposing violations of federal law and the U.S. Constitution. Most importantly, LLF has members that would otherwise have standing to sue in their own right that will suffer specific and concrete harm as a direct result of the Defendants' actions. Specifically, Mr. Dummett and Mr. Volodarsky are members of LLF. Therefore, LLF has standing in the instant case.

Finally, and most importantly, only one Plaintiff needs to have standing in order to maintain a suit. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Because Plaintiff Dummett has standing, all other Plaintiffs in the instant case, including Liberty Legal Foundation, also have standing. The Defendants' motion to dismiss for lack of standing must be **DENIED**.

## V.    Ripeness

Contrary to Defendants' assertion, *Robinson v. Bowen* and 3 U.S.C. §15 are inapplicable to the instant case. Defs.' Mot. At 8; *citing* 567 F. Supp. 2d at 1147. First, *Robinson* and 3 U.S.C. §15 address the rights and responsibilities of delegates to the electoral college, not Presidential candidate plaintiffs. More importantly, if *Robinson* had been applicable to the facts at bar, it has been overturned by *Drake v. Obama*. 664 F.3d 774, 782-783 (9th Cir. 2011). *Robinson* held that "[j]udicial review - if any – should occur only after the electoral and Congressional processes have run their course." 567 F. Supp. 2d at 1147. However, the *Drake* Court held that such claims would be justiciable before

an election, but moot after the election had been held. 664 F.3d at 784. The 9th Circuit's ruling that such challenges would be moot after the election precludes the District Court's holding that such challenges are not ripe before the election.

To determine "ripeness" courts must consider whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).

Earlier this month the Western District of Tennessee held that the "legal dispute over the Constitution's definition of 'natural born citizen' and the Supreme Court's decision in *Minor*…is substantial." Ex. 1 at 8.

In the instant case the acts alleged reflect the procedures taken by the named Defendants in every Presidential election for decades. The acts alleged are identical to acts taken by the named Defendants prior to the 2008 election of candidate Obama. Therefore, the acts alleged are immediate and real.

The fact that the Defendants have not yet performed the acts alleged does not deny this Court jurisdiction. To argue otherwise would deny the well-established fact that Courts regularly issue preemptory orders in order to prevent harm before it occurs.

The Defendants assertion that they cannot be prohibited from lying to State officials simply because they haven't yet lied to the State officials is analogous to telling this Court that it doesn't have jurisdiction to issue an order prohibiting a party from cutting down a tree because the tree has not yet been cut down. The instant case is ripe because the Defendants are certain to act as alleged in the complaint, absent this Court's

order prohibiting the Defendants from acting. The Defendants' motion to dismiss for lack of ripeness must be **DENIED**.

### VI. This Court Has Personal Jurisdiction

Plaintiffs' complaint alleges that the Defendants will make false statements in certifications to be sent to the Secretaries of State for all 50 States. 2nd Amd. Compl. at ¶¶52-55. The Plaintiffs request that this Court take judicial notice that Arizona is one of the 50 states.

The act of sending a certification to the Arizona Secretary of State, certifying that candidate Obama is qualified to hold the office of President, knowing that such certification is required to have the Arizona Secretary of State place candidate Obama's name on Arizona ballots, obviously qualifies as purposefully directing activities to the forum. It also undeniably qualifies as availing the Defendants of the privilege of conducting activities in the forum.

The claims in the instant case arise directly out of the Defendants activities of sending a certification to the Arizona Secretary of State.

At most the Defendants' assertion of lack of personal jurisdiction amounts to an assertion that a necessary party has not been joined. However, even if that were true, the appropriate remedy would not be dismissal. The appropriate remedy would be to allow joinder of the necessary party. *See* Fed. R. Civ. Pro. 19 & 20.

The Defendants' motion to dismiss for lack of personal jurisdiction must be **DENIED**.

### VII. Right-to-Associate Precedent Doesn't Support Defendant's Motion

The Defendants are correct that "The Democratic Party has a Constitutional Right to Nominate Whomever it Chooses as its Candidate for President of the United States." However, that right does not give the Defendants the additional right to certify to the 50 States that its candidate is constitutionally qualified to hold the office of President when their candidate is actually *not* constitutionally qualified to hold the office of President. In other words, the Defendants' constitutional right to freedom of association does not grant them the additional right to lie to the 50 States.

Contrary to the Defendants' assertion, the Plaintiffs are not challenging the Democratic Party's right to "select a standard bearer who best represents the party's ideologies and preferences." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000). Instead, the Plaintiffs are pointing out that the Defendants' right to select a candidate does not grant them an additional right to misrepresent their candidate's qualifications to officers of the 50 States.

The Defendants' argument morphs right-to-associate precedent into a political party's right to misrepresent facts with impunity. The Defendants argue that a political party's right to determine who will be a member of the party somehow also grants the party a Constitutional right to lie to the States. No precedent supports this argument.

The right to associate has been interpreted to allow private groups to determine who will and will not be members of the group. *Jones*, 530 U.S. at 575; *Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107 (1981); *Duke v. Cleland*, 954 F.2d 1526 (11th Cir. 1992); *Belluso v. Poythress*, 485 F.Supp. 904 (N.D.Ga. 1980). However, no court has

extended this right beyond the confines of the private organization. A party can determine who it will include as members. That party can also determine which of those members will be its candidates. However, nothing in the Constitution or freedom-to-associate precedent extends this right to support the Defendants' assertion that they have a right to lie to the States.

Several right-to-associate cases did involve candidates' exclusion from ballots. *See Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107 (1981); *Duke v. Cleland*, 954 F.2d 1526 (11th Cir. 1992); *Belluso v. Poythress*, 485 F.Supp. 904 (N.D.Ga. 1980). However, all of these cases are exactly opposite to the present situation. All involved political parties excluding a candidate because the party didn't want to be associated with the candidate. In every case cited the candidate sued the party and/or state for inclusion on the ballot after being excluded.

There are no cases where a political party's decision to support a candidate created a Constitutional right to certify false facts as true. Such precedent would place the political party's right-to-lie above the rights of the States and the citizens to not be defrauded. Such precedent would negate any obligation for the political parties to ensure that certifications sent by them to State officers reflect true statements. Such precedent would negate any purpose for the States to require such certifications.

The Plaintiffs' requested relief does nothing to interfere with the rights of the parties to select candidates. The Democratic Party is free to choose Saddam Hussein or Mickey Mouse as their next Presidential candidate. However, they do not have a constitutional right to submit fraudulent or grossly negligent certifications to state

officials about their candidates. In the instant case the Plaintiffs' requested relief does nothing to infringe on the Democratic Party's right of association because the Party can include candidate Obama, or any other individual, in its organization. The Party can choose Mr. Obama, or any other person, to be its "standard bearer." The Party's rights, however, end there.

The parties' Constitutional right to select candidates ends with their right to select candidates. It does not automatically create additional rights to knowingly lie to the States.

Since many candidates have been excluded from ballots for lack of qualification to hold the office sought, we can safely conclude that the Defendant's argument fails. The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, must be **DENIED**.

## VIII.  Conclusion

For the reasons set forth herein, the Defendants' motion to dismiss must be **DENIED**.

Respectfully submitted on the 9th Day of Ziv, in the year of our Lord 2012 (a.k.a. April 30, 2012).

        _s/Van R. Irion_____
        Van R. Irion
        Liberty Legal Foundation
        9040 Executive Park Drive, Ste. 200
        Attorney for Plaintiffs
        (423) 208-9953

CERTIFICATE OF SERVICE

It is hereby certified that on 9th Day of Ziv, Year of our Lord 2012 (a.k.a. April 30, 2012), a copy of "Plaintiffs' Opposition to Defendants' Motion to Dismiss" was filed electronically. Parties may access this filing through the Court's electronic filing system. A copy of this motion will also be served upon the Defendants via mail.

_s/Van R. Irion_____
Van R. Irion
Liberty Legal Foundation
9040 Executive Park Drive, Ste. 200
Attorney for Plaintiffs
(423) 208-9953