**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Liberty Legal Foundation; John Dummett; Leonard Volodarsky; Creg Maroney, <br><br> Plaintiffs, <br><br> vs. <br><br> National Democratic Party of the USA, Inc.; Debbie Wasserman Schultz; and Democratic National Committee, <br><br> Defendants. | No. CV 11-2089-PHX-SRB <br><br> **ORDER** |

The Court now considers Defendants Democratic National Committee ("DNC") and Congresswoman Debbie Wasserman Schultz's (collectively, "Defendants") Motion to Dismiss ("MTD") (Doc. 24) and Motion for Sanctions ("Mot. for Sanctions") (Doc. 28).

**I.   BACKGROUND**

On October 25, 2011, Plaintiffs Liberty Legal Foundation ("LLF"), John Dummett, Leonard Volodarsky, and Creg Maroney filed a Class Action Complaint against the National Democratic Party of the USA, Inc. ("Democratic Party USA") and Congresswoman Debbie Wasserman Schultz for declaratory and injunctive relief. (*See* Doc. 1, Class Action Compl. for Declaratory & Injunctive Relief ("Compl.") at 1, 15-16.) On January 23, 2012, Plaintiffs amended their Class Action Complaint to include the DNC. (Doc. 10, 2nd Am. Class Action

Compl. for Declaratory & Injunctive Relief ("SAC") at 1.)[1] Plaintiffs allege that the Democratic Party USA is a national political party that maintains an office in Phoenix, Arizona, and that the DNC is a subdivision of the Democratic Party that is responsible for certifying candidates and that maintains an office in Washington, D.C. (*Id.* ¶¶ 36-37.)[2] The SAC alleges that Congresswoman Wasserman Schultz is the chairperson of the DNC. (*Id.* ¶ 38.)

According to the SAC, Plaintiff Creg Maroney is a United States citizen and a member of LLF; he resides in the state of New York. (*Id.* ¶¶ 31, 33.) Plaintiffs allege that Plaintiff Leonard Volodarsky is a presidential candidate for the 2012 presidential election and also a member of LLF; he resides in New York. (*Id.* ¶¶ 26, 28.) The SAC alleges that Plaintiff John Dummett is also a presidential candidate and a member of LLF who resides in California. (*Id.* ¶¶ 19, 21-23.) According to the SAC, LLF is a charitable organization whose main purpose "is the defense of basic human rights" and whose "mission is to '[s]trategically challenge flawed court precedent to restore the Constitution and individual liberties.'" (*Id.* ¶ 16.)

Plaintiffs allege that the Secretaries of State for each state depend on political parties to make truthful assertions regarding presidential candidates' credentials and have no authority to refute these assertions. (*Id.* ¶ 1.) According to Plaintiffs, the Democratic Party intends to nominate President Barack Obama as its candidate in the 2012 presidential election and intends to send documents to all fifty Secretaries of State representing that he is qualified

---

[1] Defendants contend that Plaintiffs filed the SAC without the consent of the parties or leave of the Court in violation of Federal Rule of Civil Procedure 15(a)(2). (MTD at 2 & n.2.) However, given that Defendants substantively respond to the SAC in their Motion to Dismiss, the Court will consider the SAC as the operative complaint for purposes of ruling on Defendants' Motion to Dismiss.

[2] Plaintiffs' allegations concerning the Democratic Party USA are not entirely clear, as Plaintiffs appear to refer to the Democratic Party USA and the DNC as the "Democratic Party." (*See id.* at 1.) In any case, the Democratic Party USA has been dismissed from this case due to lack of service. (*See* Doc. 29, Order.)

1  to hold the office of President. (*Id.* ¶¶ 8-9.)

2  Article II § 1 of the United States Constitution requires that the President of the United States be a "natural born Citizen." U.S. Const. art. II, § 1, cl. 4. Plaintiffs allege that President Obama's father was not a United States citizen when President Obama was born and therefore that President Obama is not a natural born citizen and is not qualified to be placed on any ballot for the 2012 presidential election. (SAC ¶¶ 10, 13.)

Plaintiffs bring claims for negligent misrepresentation and fraud/intentional misrepresentation and seek declaratory and injunctive relief, as well as costs, expenses, and attorney's fees. (*Id.* ¶¶ 50-65, Prayer for Relief.) Defendants the DNC and Congresswoman Wasserman Schultz move to dismiss this case with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (MTD at 1.) They also move for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, arguing that Plaintiffs' counsel should be sanctioned (1) for pursuing a legal theory that has been routinely rejected and (2) for naming the Democratic Party USA as a defendant, as it is "a sham organization with no affiliation with the DNC or the Democratic Party." (Mot. for Sanctions at 1.)

## II. LEGAL STANDARDS AND ANALYSIS

### A. Motion to Dismiss

Defendants bring several jurisdictional challenges to Plaintiffs' suit, asserting that Plaintiffs lack standing, that the dispute is not ripe, and that the Court does not have personal jurisdiction over the DNC and Congresswoman Wasserman Schultz. (MTD at 5-11.) "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Personal jurisdiction "is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotations omitted). Where personal jurisdiction is more easily resolved than subject matter jurisdiction, the Court may address that first. *See Ruhrgas*, 526 U.S. at 588; *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011).

1. The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). There is no statutory method for resolving this issue; thus, "the mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If a court decides to rule on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a plaintiff must make only a prima facie showing of jurisdictional facts to survive the motion. *Bauman,* 644 F.3d at 919. The "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor" for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the U.S. Constitution. *See* Ariz. R. Civ. P. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). This reduces the issue of personal jurisdiction to one of federal due process. *Cybersell*, 130 F.3d at 416; *Uberti*, 892 P.2d at 1358.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the state to exercise jurisdiction over the defendant in all

1 matters; and (2) specific jurisdiction, which results from the defendant's contacts with the
2 forum state giving rise to the subject litigation. *See Goodyear Dunlap Tires Operations, S.A.*
3 *v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*,
4 466 U.S. 408, 414 n.8, 415 n.9 (1984); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d
5 299, 301-02 (9th Cir. 1986).

### 1. General Personal Jurisdiction

Exercising "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum" has been denominated general jurisdiction. *Helicopteros*, 466 U.S. at 415 n.9. In *International Shoe*, the Supreme Court established that general personal jurisdiction is present in "'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [the corporation or entity] on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear Dunlap*, 131 S. Ct. at 2853 (quoting *Int'l Shoe*, 326 U.S. at 318). Defendants' contacts with the forum state must be so pervasive that they amount to a near physical presence in the state. *Schwarzenegger*, 374 F.3d at 801. Nothing in the record supports a finding of general jurisdiction. Neither Defendant resides in Arizona, nor do Defendants' alleged contacts rise to the requisite level of systematic or continuous contact; in fact no present contacts between Defendants and Arizona are alleged. (*See* SAC ¶¶ 1-65.)

### 2. Specific Personal Jurisdiction

The Supreme Court has established two general scenarios in which a forum state has specific personal jurisdiction over an out-of-state defendant. "[J]urisdiction unquestionably could be asserted where the corporation's in-state activity is 'continuous and systematic' and *that activity gave rise to the episode-in-suit*." *Goodyear Dunlap*, 131 S. Ct. at 2853 (quoting *Int'l Shoe*, 326 U.S. at 317). Also, "the commission of certain 'single or occasional acts' in a [s]tate may be sufficient to render a corporation answerable in that [s]tate with respect to those acts, though not with respect to matters unrelated to the forum connections." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 318). Plaintiffs allege no continuous and systematic contacts between Defendants and Arizona; thus, the Court will look to whether Plaintiffs allege a

1  single or occasional act sufficient to render Defendants subject to personal jurisdiction in
2  Arizona.
3        The Ninth Circuit has established a three-part test to determine whether or not specific
4  personal jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

9  *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.
10 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test," and "[i]f
11 the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in
12 the forum state." *Id.*
13       Under the first prong of the specific personal jurisdiction test, the plaintiff must
14 establish that the defendant purposefully availed himself or herself of the privilege of
15 conducting activities in the forum state or purposefully directed activities toward the forum
16 state. *See id.* These two inquires are often equated to "'purposeful availment,' . . . but
17 availment and direction are, in fact, two distinct concepts." *Id.* An analysis of purposeful
18 availment of privileges of the forum state typically centers on the defendant's actions in the
19 forum state and is usually analyzed in connection with contract disputes. *Id.* An analysis of
20 purposeful direction normally centers on actions performed outside the forum state that are
21 directed toward the forum state, and this is typically used in connection with tort suits. *Id.*
22 at 802-03.
23       For at least intentional torts, the Ninth Circuit Court of Appeals applies the *Calder*
24 effects test in examining purposeful direction of a defendant's activities toward a forum state.
25 *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("Under our
26 precedents, the purposeful direction or availment requirement for specific jurisdiction is
27 analyzed in intentional tort cases under the 'effects' test derived from *Calder* . . . ."); *see also*
28 *Calder v. Jones*, 465 U.S. 783, 788-90 (1984). It is unclear whether the *Calder* effects test

1  applies to all tortious causes of action, including negligence, or only to intentional torts.
2  *Compare, e.g.*, *Calder*, 465 U.S. at 789 ("[P]etitioners are not charged with mere untargeted
3  negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at
4  [the forum state]."); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th
5  Cir. 2007) ("[I]t is well established that the *Calder* test applies only to intentional torts, not
6  to . . . breach of contract and negligence claims . . . ."), *with Mavrix Photo, Inc. v. Brand
7  Techs. Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("'In tort cases, we typically inquire
8  whether a defendant purposefully direct[s] his activities at the forum state, applying an
9  effects test that focuses on the forum in which the defendant's actions were felt, whether or
10 not the actions themselves occurred within the forum.'" (quoting *Yahoo! Inc. v. La Ligue
11 Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006)); *Menken v.
12 Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (applying *Calder* effects test to tort claims,
13 including negligence). Here, the Court will apply the *Calder* test to Plaintiffs' intentional
14 misrepresentation claim, but will analyze Plaintiff's negligent misrepresentation claim under
15 the purposeful availment standard. *See Marlyn Nutraceuticals, Inc. v. Improvita Health
16 Prods.*, 663 F. Supp. 2d 841, 850 (D. Ariz. 2009) (analyzing "fraud claim under the
17 purposeful-direction effects test" and "negligent misrepresentation claim under the
18 purposeful availment standard"). However, the *Calder* effects analysis is the same for both
19 of Plaintiffs' claims, and under either a purposeful availment analysis or a purposeful
20 direction analysis, Plaintiffs have failed to demonstrate that this Court has personal
21 jurisdiction over Defendants regarding either of Plaintiffs' claims.

### a. **Purposeful Availment**

23 "'[T]he purposeful availment requirement is satisfied if the defendant has taken
24 deliberate action within the forum state or if he has created continuing obligations to forum
25 residents.'" *Cybersell*, 130 F.3d at 417 (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th
26 Cir. 1995)). The purposeful availment standard is meant to determine whether "the
27 defendant's conduct and connection with the forum [s]tate are such that he should reasonably
28 anticipate being hailed into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286,

297 (1980). "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 2008)). Even the existence of a contract with a forum resident is not sufficient to support specific jurisdiction; rather, courts look to the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether a "defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).

Here, Plaintiffs do not allege that Defendants have acted in any way to purposefully avail themselves of the protections and privileges of Arizona. Nowhere in the SAC do Plaintiffs allege that Defendants made a contract, engaged in business in Arizona, or established ongoing contacts in Arizona. Based on Plaintiffs' allegations, Defendants did not purposefully avail themselves of the benefits and protections of Arizona.

### b.   **Purposeful Direction: *Calder* Effects Test**

Purposeful direction under the *Calder* effects test "'requires that the defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food*, 303 F.3d at 1111). An act for purposes of the *Calder* test is defined as an "'external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended.'" *Id.* at 806 (quoting Restatement (Second) of Torts § 2 (1964)). The analysis focuses on intent to perform an act, not intent to accomplish a goal. *Id.* The plaintiff must also show that the defendant "'expressly aimed' its intentional act" at the forum state. *Id.* This requirement is satisfied when the alleged conduct is "targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

Plaintiffs do not allege any action that has been or is being taken in relation to the upcoming 2012 presidential election. According to Plaintiffs, Defendants will, at some point in the future, promote the allegedly false idea that President Obama is eligible to be the President in connection with the 2012 election. (*See* SAC ¶¶ 1, 8-9.)[3] Plaintiffs do not allege that Defendants have completed any act in connection with this alleged misrepresentation.

Even if a future act could be an intentional act for purposes of the *Calder* test, however, Plaintiffs have not established that Defendants have "expressly aimed" their act at Arizona in any way. "'[E]xpress aiming' encompasses wrongful conduct individually targeting a known forum resident." *Bancroft*, 223 F.3d at 1087. Here, Plaintiffs have not alleged that any of them are residents of Arizona or that they have any ties to Arizona whatsoever. (*See, e.g.*, SAC ¶¶ 19, 26, 33.) Plaintiffs have also not alleged anything indicating that Defendants will specifically target them. *See Bancroft*, 223 F.3d at 1088 (discussing prior cases decided under the *Calder* test where specific jurisdiction was found and concluding that "[t]he presence of individualized targeting is what separates these cases from others in which we have found the effects test unsatisfied"). As in other cases finding a lack of individualized targeting and thus a lack of personal jurisdiction, "there [is] no showing that [Defendants] even knew of the existence of [Plaintiffs,] let alone targeted them individually." *See id.* (discussing *Cybersell*, 130 F.3d at 420).

Plaintiffs allege that Defendants will make a representation to all fifty Secretaries of State and "request that this Court take judicial notice that Arizona is one of the [fifty] states." (*See* SAC ¶ 52; Doc. 26, Pl.'s Opp'n to MTD at 14.) However, an act national in scope, not targeting any particular person or place, is insufficient to establish personal jurisdiction. *See, e.g.*, *Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir. 1996) (discussing prior case "in which we held that publication of a commercial libel in a worldwide medical journal did not

---

[3] According to Plaintiffs, it is against the Democratic Party's rules to nominate a candidate that is not eligible for the office; therefore, by endorsing President Obama in the 2008 election, it implicitly represented that he was eligible to be President. (SAC ¶ 1 n. 1.)

- 9 -

permit suit against Swedish writers in California"); *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379-80 (9th Cir. 1981) (discussing prior case in which letters to the plaintiff and advertisement of product in national periodicals were found insufficient to establish personal jurisdiction); *Alsop v. Carolina Custom Prods., Inc.*, No. EDCV 07-212-VAP (JCRx), 2007 WL 2441025, at *7 (C.D. Cal. June 29, 2007) ("Defendant has not targeted advertising or promotional materials to residents of California because it advertises in motorcycle magazines that are nationally distributed."); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006) ("[W]e . . . require 'something more' than just a foreseeable effect to conclude that personal jurisdiction is proper." (quoting *Bancroft*, 223 F.3d at 1087)); *Bancroft*, 223 F.3d at 1087 ("We now conclude that 'something more' is what the Supreme Court described as 'express aiming' at the forum state.").

Here, Plaintiffs have not alleged any intentional act, but rather an intent to commit an intentional act, and, more importantly, they have not established that Defendants have aimed or will expressly aim their alleged intended act at Arizona or at Plaintiffs in a way that constitutes individualized targeting. Accordingly, the Court concludes that Plaintiffs have failed to establish purposeful availment or purposeful direction–the first requirement for a finding of specific personal jurisdiction–and therefore concludes it lacks personal jurisdiction over Defendants.

**B.    Motion for Sanctions**

Defendants move for sanctions against Plaintiff's attorney, Van Irion, pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. (Mot. for Sanctions at 1.) Both Rule 11 and section 1927 allow for sanctions against attorneys. *See* 28 U.S.C. § 1927; Fed. R. Civ. P. 11(c)(1). However, the Ninth Circuit Court of Appeals has warned that sanctions against attorneys under both Rule 11 and section 1927 are "'extraordinary remed[ies]'" that require "'extreme caution'" when exercised. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 437 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)). Defendants allege that attorney Irion's conduct is sanctionable

under both Rule 11 and section 1927 "because (1) the legal theory that colors Plaintiffs' claims is unwarranted and has been rejected by each and every court and administrative body to consider it, and (2) Plaintiff's [SAC] names as a defendant a sham organization with no affiliation with the DNC or Democratic Party." (Mot. for Sanctions at 1.)

### 1.     Sanctions Under 28 U.S.C. § 1927

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "To be sanctionable under § 1927, therefore, counsel's conduct must multiply the proceedings in both an 'unreasonable and vexatious manner.'" *In re Girardi*, 611 F.3d 1027, 1060-61 (9th Cir. 2010) (quoting *B.K.B. v. Miami Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)). The Ninth Circuit Court of Appeals has determined that section 1927 does not "apply to complaints or initial pleadings." *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1076 (9th Cir. 2011); *see also In re Keegan*, 78 F.3d at 435. Defendants do not argue that Plaintiffs have unreasonably and vexatiously "multiplied" proceedings by filing two amended complaints in this case, nor do they argue that Plaintiffs have filed any unwarranted motions. While Defendants state that Plaintiffs "instituted parallel proceedings in Tennessee," they do not make any argument that this constitutes vexatious and unreasonable multiplication of proceedings or that section 1927 was intended to sanction conduct occurring in different cases. (*See* Mot. for Sanctions at 3); *see also Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008) ("Congress's use of the verb 'multipl[y]' in the text of the statute clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding."). The Court concludes that Defendants have not demonstrated that Plaintiffs vexatiously and unreasonably *multiplied* proceedings in this case and therefore declines to impose sanctions under section 1927.

- 11 -

### 2. **Rule 11 Sanctions**

Rule 11 provides that when filing a pleading, motion, or other paper with the court,

> an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Sanctions may be imposed if an attorney fails to satisfy any part of Rule 11(b). *Id.* 11(c)(1). A court has authority to issue Rule 11 sanctions despite having dismissed the case due to lack of jurisdiction. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process . . . . Such a determination may be made after the principal suit has been terminated.").

"[R]ule [11] provides two independent bases for the imposition of sanctions: one if a pleading is frivolous and another if it has been filed for an improper purpose." *Westlake N. Prop. Owners Ass'n v. City of Thousand Oaks*, 915 F.2d 1301, 1305 (9th Cir. 1990); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). If both frivolousness and improper purpose are claimed with regard to a complaint, it must first be determined that a pleading is frivolous before it can be deemed "to have been filed for an improper purpose." *Westlake*, 915 F.2d at 1305; *see also Townsend*, 929 F.2d at 1362. "An objective standard of reasonableness is applied to determinations of frivolousness," and an "attorney's subjective intent in filing is thus irrelevant to the [R]ule 11 analysis." *Westlake*, 915 F.2d at 1305 (quotation omitted). A determination of frivolousness in the context of Rule 11 "denote[s] a filing that is both baseless and made without a reasonable and competent

inquiry." *Townsend*, 929 F.2d at 1362. A "'reasonable inquiry' means an inquiry reasonable under 'all the circumstances of a case.'" *Id.* at 1364 (quoting *Cooter & Gell*, 496 U.S. at 401). Determining whether to impose Rule 11 sanctions is a fact-intensive inquiry, and courts consider inter alia the nature of the attorney's conduct and the difficulty of acquiring sufficient information before filing a claim or naming a party as a defendant. *See Cooter & Gell*, 496 U.S. at 404; *Townsend*, 929 F.2d at 1364.

### a. Frivolous Legal Claims

Defendants argue that Plaintiffs' claims are frivolous and an "inquiry by a reasonable attorney would have revealed as much," given the "long-standing (and ever-expanding) body of law rejecting Plaintiffs' legal theory." (Mot. for Sanctions at 8.) Defendants provide a long list of cases rejecting Plaintiffs' theory that President Obama is ineligible to serve as President due to not being a natural born citizen and point out in particular one case in which Mr. Irion allegedly served as counsel for one of the unsuccessful challenges. (*Id.* at 7-8 & n.4.) However, this case and many of the unpublished cases cited by Defendants were decided after Plaintiffs filed their Complaint in this case. (*See id.* (listing cases with dates); Compl. (dated October 25, 2011); SAC (dated January 23, 2012).) In addition, the lack of legal support for a claim needed for a defendant to prevail on a motion to dismiss is distinct from the level of frivolity warranting sanctions. *See Westlake*, 915 F.2d at 1306 ("The standard for dismissal pursuant to [R]ule 12(b)(6) and the standard for imposing sanctions pursuant to [R]ule 11 are not the same."). Given that Rule 11 allows claims that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," and that many of the cases rejecting Plaintiffs' specific theory had not been decided at the time of Plaintiffs' Complaint, the Court declines to impose Rule 11 sanctions in this case, but hereby warns Mr. Irion that knowingly continuing to bring claims that have previously been dismissed may warrant sanctions in the future. *See* Fed. R. Civ. P. 11(b)(2).

### b. Naming the Democratic Party USA as a Party

- 13 -

Defendants argue that a "reasonable inquiry by Mr. Irion would have revealed that the 'National Democratic Party of the USA, Inc.' is *not* affiliated with the DNC or the Democratic Party in any way, and that it is a sham organization that may be affiliated with the Shelby County (Tennessee) Republican Party." (Mot. for Sanctions at 8.) Defendants also speculate that "Mr. Irion's litigation strategy . . . involves naming this sham organization as a defendant and attempting to obtain a default judgment against it either for public relations purposes or as leverage against the remaining defendants." (*Id.*) Mr. Irion asserts that he "searched the Tennessee Secretary of State's records for information on any entity with the terms 'Democratic Party' or 'National Democratic Party'" and that the Democratic Party USA had several different names associated with it, only one of which was the Shelby County Republican Party. (Doc. 31, Opp'n to Defs.' Mot. for Sanctions at 3, 5.)

To warrant sanctions for improperly naming a party in a suit, "joining the party must be baseless or lacking in plausibility." *Cmty. Elec. Serv. of L.A., Inc. v. Nat'l Elec. Contractors Ass'n*, 869 F.2d 1235, 1245 (9th Cir. 1989), *abrogated on other grounds by Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1141 (9th Cir. 1990), *amended and superseded by* 929 F.2d 1358 (9th Cir. 1990). Courts are "'reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, if the litigant has conducted a reasonable inquiry into the facts.'" *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) (quoting *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987)). Here, while Mr. Irion did not conduct as thorough an inquiry as he might have, the Court declines to impose sanctions where Defendants have not shown that the naming of the Democratic Party USA was completely baseless or done in bad faith, and where the Defendants seeking sanctions are unrelated to the party they claim was improperly named (and which was dismissed for lack of service). Indeed, Defendants the DNC and Congresswoman Wasserman Schultz have not been harmed by Plaintiff's naming the Democratic Party USA as a party, even if bringing suit against it was improper.

### III. CONCLUSION

The Court concludes that Plaintiffs have not met their burden of establishing this Court has personal jurisdiction over Defendants the DNC and Congresswoman Wasserman Schultz and therefore dismisses this case. The Court also finds that Defendants have not demonstrated that sanctions against Plaintiff's attorney are warranted in this case and therefore denies Defendants' Motion for Sanctions. The Court therefore denies as moot Plaintiffs' Motion to File Supplemental Response (Doc. 35).

**IT IS ORDERED** granting Defendants the DNC and Congresswoman Wasserman Schultz's Motion to Dismiss (Doc. 24).

**IT IS FURTHER ORDERED** denying Defendants the DNC and Congresswoman Wasserman Schultz's Motion for Sanctions (Doc. 28).

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion to File Supplemental Response (Doc. 35).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

DATED this 11th day of July, 2012.

_____
Susan R. Bolton
United States District Judge